# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RAZA SIDDIQUI, et al., | ) |
| Plaintiffs, | ) Case No. 1:22-cv-05732 |
| v. | ) |
| | ) Hon. Gary Feinerman |
| NABET-CWA, et al., | ) |
| Defendants. | ) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiffs, by and through their undersigned attorneys, hereby submit this Memorandum of Law in Support of their Motion for Temporary Restraining Order, and, in so doing, state as follows:

## INTRODUCTION

Plaintiffs brought this action under the Labor-Management Relations Act, 29 U.S.C. § 401 *et seq.* ("LMRDA"), seeking an order dissolving the unlawful and bad faith trusteeship imposed upon Local 41 by Defendants NABET-CWA and its officers, including Sector President Braico and Sector Vice President Marinaro. The trusteeship of Local 41 was imposed by Defendants on September 22, 2022, without any hearing and without any due process, in violation of the LMRDA. Defendants imposed this trusteeship based on allegations that are markedly false and which do not provide a lawful basis to place a local union in trusteeship.

Defendants' true, bad faith purpose in placing Local 41 in trusteeship was to oust and to silence Local union officers and members, including Plaintiffs and the rest of the Local 41 leadership, who had been democratically elected in March of 2022 ("the Siddiqui administration"). Defendants now seek to use this unlawful trusteeship to hand over control of Local 41 to Defendants' political allies, the very same individuals who were defeated in the March, 2022

1

elections. This Court should take immediate action to dissolve this unlawful trusteeship and return control of Local 41 to its members and their democratically-elected leadership.

## SUMMARY OF FACTS

In March, 2022, Plaintiff Siddiqui ran a slate of candidates challenging the then-incumbent officers of Local 41, including then-President Willadsen and then-Treasurer Keating. (Verified Complaint) (Dkt. 1, ¶ 32). Prior to the election, Defendants Braico and Marinaro endorsed the incumbent slate of officers advertising the close the relationship between the former administration and the NABET-CWA Sector, including Braico himself. (Dkt. 1, ¶¶ 33-34); (Declaration of Raza Siddiqui, Exs. A-1, A-2). Also in the lead up to the election, Defendant Braico provided guidance and support to Willadsen in how to win the upcoming election. (Dkt. 1, ¶¶ 35-36; Siddiqui Dec., Ex. B). Despite Defendants' meddling in the Local 41 election, the Siddiqui slate defeated the incumbent slate by significant margins. (Dkt. 1, ¶¶ 37-39; Siddiqui Dec., Ex. K).

Immediately after their defeat, Keating, Willadsen and the Defendants began a concerted effort to undermine the democratically-elected officers, oust them from their positions, and seize control of Local 41. (Dkt. 1, ¶ 41). These actions included the destruction of the physical and electronic property of Local 41 by Willadsen, removal of Local 41's property from its offices by Keating, and the refusal to transfer control over the assets and property of Local 41, including exclusive control over numerous bank accounts, passwords necessary to access all accounts and electronic files of the Local by Keating. (Dkt. 1, ¶¶ 41-54). Charges were filed against Willadsen and Keating based on their misconduct in the transition of the Local to the Siddiqui administration. (Dkt. 1, ¶¶ 44-46); (Siddiqui Dec. Exs. D, E, F, G). In a further showing of Defendants' bad faith, Sector Vice President Marinaro summarily dismissed these serious charges without the benefit of any evidentiary hearing. (Dkt. 1, ¶ 61; Siddiqui Dec. Exs. H, I).

When internal charges are filed, Defendant Marinaro's role is a ministerial one – that is to confirm whether the charge was in proper form, was timely and had sufficient facts. (Dkt. 1, ¶¶ 56-59; Siddiqui Dec., Ex. J, § 10.3.A). However, in response to the charges lodged against his political allies, Defendant Marinaro did not limit his review to whether the charge conformed to the above requirements. (Dkt. 1, ¶ 62). Rather, Marinaro seemingly performed his own investigation, reached conclusions as to the credibility of factual allegations, and made his own determinations as to the scope and meaning of various alleged violations of the Constitution and By-laws. Such determinations on the merits are to be left to the Trial Body after hearing all the evidence. By his conduct in rendering his ruling on the merits of these charges, Defendant Marinaro placed himself in the stead of the Trial Body. (Dkt. 1, ¶¶ 62-70).

Defendants' bad faith was further evidenced by their decision to rerun the March, 2022 election. Internal election challenges were filed regarding the March, 2022 election. (Dkt. 1, ¶ 73). The Local 41 Executive Board appointed a three-member Local Election Investigation Committee ("LEIC") to investigate those challenges. (Dkt. 1, ¶ 74). On or about June 18, 2022, the LEIC found that due to the substantial margins of victory by the Siddiqui slate, any alleged ballot errors would not have been determinative and, therefore, recommended the dismissal of the election challenges. (Dkt. 1, ¶ 76). The LEIC's recommendations were ultimately adopted by the Local 41 Executive Board on June 29, 2022. (Dkt. 1, ¶ 75; Siddiqui Dec., Ex. K).

Unhappy with that result, the Sector appointed a Sector Election Investigation Committee ("SEIC") on July 25, 2022. The creation of the SEIC occurred only after the internal charges had been filed against Willadsen and Keating on June 27, 2022. (Dkt. 1, ¶ 77; Siddiqui Dec., Exs. E, F). The SEIC seemingly ignored the findings of the LEIC and incorrectly found that Local 41 did not conduct any investigation on the election challenges. (Dkt. 1, ¶ 78; Siddiqui Dec., Ex. M). The

SEIC determined that 16 ballots were in question. (*Id.*). The margin of victory of the Siddiqui slate was well over 16 votes, with the highest margin being well over 100 votes and the smallest margin of victory being 41 votes. (Dkt. 1, ¶ 80-81; Siddiqui Dec., Ex. K). Even though the 16 ballots allegedly in question were not determinative, the SEIC nevertheless recommended an election rerun. The SEIC's recommendations were adopted by the Sector Executive Council. (Dkt. 1, ¶ 82).

All alleged errors in the election process occurred while the former administration was still in office. (Siddiqui Dec., Ex. M). Nonetheless, the former administration is going to get a second attempt to win an election which they previously lost, based on the errors they made during the election process. However, this is not a true "rerun" with all candidates duly nominated for the March, 2022 election again being on the ballot. (Dkt. 1, ¶¶ 84-85). Rather, the Sector has determined to begin the entire election process over again including beginning a new nomination process. (Siddiqui Dec., Ex. N). There have been no allegations of misconduct with regard to the nomination process for the March, 2022 election, yet the Sector is completely disregarding the nominations made by the membership for the officer election in March 2022. (Dkt. 1, ¶ 86).

Since September 22, 2022, to the present, Defendants and their political allies have been making a concerted effort to thwart President Siddiqui's attempts to find employment in the industry, in an effort to negatively impact his eligibility to be re-nominated and once again run for the office of President of Local 41. (Dkt. 1, ¶ 87). This wholly unwarranted "rerun" election was announced just days after after NABET-CWA and its Sector Executive Council members decided to place Local 41 under an unlawful trusteeship. The trusteeship and the "rerun" election are both intended to discredit the officers of the Siddiqui administration in an attempt to remove them from office permanently and replace them with Defendants' political allies. (Dkt. 1, ¶ 88). NABET-CWA and its leadership, including Defendants Braico and Marinaro, have provided vocal support

4

to their political allies, Willadsen and Keating, who were defeated in the 2022 elections; and Defendants clearly decided to remove the Siddiqui administration by any means necessary, including specifically by placing Local 41 under trusteeship. (Dkt. 1, ¶¶ 90-92).

## LEGAL STANDARDS FOR TEMPORARY RESTRAINING ORDER

To succeed on a motion for a temporary restraining order, the moving party must show: (1) there is some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) it will suffer irreparable harm if the restraining order is not granted. *Long v. Board of Educ., Dist. 128*, 167 F.Supp.2d 988, 990 (N.D. Ill. 2001). If these requirements are met, then the Court must consider the harm the nonmoving party will suffer if preliminary relief is granted, "balancing such harm against the irreparable harm the moving party will suffer if relief is denied." *Id.* (quoting *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)). Finally, the Court must consider the public's interest that would be affected by granting or denying the TRO. *Id.* When considering these factors, the Court applies a "sliding scale" approach; "the more likely a plaintiff will succeed on the merits, the less balance of irreparable harms need to favor the plaintiff." *Id.*

## ARGUMENT

**I.     Plaintiffs Are Entitled to a Temporary Restraining Order Dissolving the Unlawful Trusteeship of Local 41**

**A.     Plaintiffs' Likelihood of Success on the Merits**

Plaintiffs have a high likelihood of success on the merits of their claim. In order to satisfy this first requirement for injunctive relief dissolving a trusteeship, "plaintiffs must show that they have a 'better than negligible' chance of success on the merits of at least one of their claims," which "is an admittedly low requirement and is simply a threshold question." *Blevins v. Int'l Bhd. Of Teamsters, Int'l Union,* 2020 WL 5909073, at *8 (N.D. Ill. Oct. 6, 2020), *appeal dismissed sub nom.,* 2020 WL 9217224 (7th Cir. Dec. 28, 2020) (collecting cases).

To succeed on a claim under Title III of the LMRDA, the party challenging the trusteeship must typically show, by clear and convincing evidence, that there was a procedural deficiency, bad faith or unauthorized purpose in the implementation of the trusteeship. *Mason Tenders Dist. Council of Greater New York v. Laborers' Int'l Union of North Am.*, 884 F.Supp. 823, 832 (S.D.N.Y. 1995). A trusteeship can only be valid if it is authorized or ratified after a fair hearing:

> In any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified **after a fair hearing** either before the executive board or before such other body as may be provided in accordance with its constitution or bylaws shall be presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 461 of this title. 29 USC § 464(c) (emphasis added).

Under this provision, where a trusteeship has been properly established after a fair hearing, it shall be presumed valid for the first 18 months, after which time it will be presumed invalid. *Id.* "A trusteeship imposed in contravention of a union's constitution and bylaws or without a fair hearing, however, is not entitled to a presumption of validity." *Blevins,* 2020 WL 5909073 at *9; *United Bhd. of Carpenters & Joiners of Am. v. Brown*, 343 F.2d 872, 883-84 (10th Cir. 1965) (same).

Here, the trusteeship was imposed without any notice, opportunity to present evidence, or any hearing whatsoever. On September 22, 2022, a request was made by a small group of Local 41 members, including Keating and his political allies, to NABET-CWA to place Local 41 under a "temporary administration" or trusteeship. The very same day that the request was made, Defendants placed Local 41 into trusteeship on September 22, 2022, without any hearing and without any modicum of due process. (Dkt. 1, ¶ 94; Dkt. 1-2 (Ex. 1 to Complaint)). As of the date of this filing, Defendants have failed to schedule any hearing on the merits of the propriety of the

6

trusteeship. (Dkt. 1, ¶ 112).[1] Because the trusteeship was imposed without any hearing as required by the LMRDA, the trusteeship is presumptively invalid. Plaintiffs therefore have a substantial likelihood of success on the merits. 29 U.S.C. § 464; *Blevins,* 2020 WL 5909073 at *9.

Plaintiffs further have a substantial likelihood of success on the merits because the stated reasons for the trusteeship are pretextual, and the trusteeship was actually imposed and maintained in bad faith. Under 29 U.S.C. §§ 462 and 464, a trusteeship must be established and administered in good faith, and must be supported by honest, non-pretextual reasons. Section 462 of the LMRDA establishes that trusteeships are permissible only for limited reasons:

> Trusteeships shall be established . . . for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization. 29 U.S.C. § 462.

Regardless of the stated purpose for the imposition of a trusteeship, it must always be brought and maintained in good faith, and any trusteeship that is brought in bad faith is unlawful and must be dissolved. "The Seventh Circuit has held that trusteeships must be imposed both for a statutorily authorized purpose *and* in good faith, stating that 'the requirement of 'good faith' obtains regardless of the 'purpose' for which a trusteeship is created.'" *Blevins*, 2020, WL 5909073 at *10 (emphasis in original) (citing, *inter alia, Allied Industrial Workers* v. *Local 589,* 693 F.2d 666, 676 (7th Cir. 1982)). That conclusion "follows from the plain language of Section 464, which provides that a trusteeship may be dissolved within its first eighteen months upon a showing of 'clear and convincing proof that the trusteeship was not established or maintained in good faith for

---

[1] It should be noted that the NABET-CWA Bylaws do not provide for any different or reduced due process in the event of an emergency. (Siddiqui Dec., Ex. J). Furthermore, in this case Defendants made no finding of an emergency. (Dkt. 1-2). In any event, there is no reasonable basis to believe an emergency existed warranting the immediate removal of Local 41's officers.

7

a purpose allowable under section 462.'" *Id.* (citing 29 U.S.C. § 464(c)). "[G]ood faith under the LMRDA requires that a trusteeship be supported by honest reasons." *Id.*

The trusteeship at issue in this case was established, and has been maintained, in bad faith and not for a purpose allowable under the LMRDA. The reasons offered by NABET-CWA for imposing the trusteeship are clearly pretextual. Defendants alleged the trusteeship was put in place: (1) to restore democratic procedures in the Local; (2) to correct financial malpractice; and (3) to otherwise carry out the objectives of NABET-CWA. (*See* Dkt. 1-2). Without benefit of a fair hearing as required under the LMRDA, Plaintiffs are wholly unaware of the underlying allegations to support the above basis for the trusteeship. It appears the Defendants lifted the touchstone phrases from the LMRDA that would supposedly justify the imposition of a trusteeship without the benefit of providing a scintilla of evidence or even any underlying basis for imposing the trusteeship. Defendants have simply failed to meet the standards required by the LMRDA.

In addition, without the benefit of a hearing Defendants have failed to provide any verifiable reason justifying the trusteeship. These reasons are merely pretext to cover for the bad faith and unauthorized reason for the trusteeship, which is to prevent the duly elected officers of Local 41 from holding office and to return control of Local 41 to Defendants' political allies. In short, the trusteeship was a political ploy. In *Blevins*, a trusteeship was imposed after a hearing, based on reasons which, on their face, comported with the language of the LMRDA. *Blevins,* 2020 WL 5909073 at *10. However, the Court determined that these reasons were dishonest because the true motivation for the trusteeship was retaliation against the local union leadership for refusing to merge with another local union. *Id.* Thus, the trusteeship was imposed in bad faith, and the Court dissolved it by injunction. *See id.* The same logic must apply here – the boilerplate stated reasons

8

for the trusteeship, put into place without any hearing, cannot validate a trusteeship that was imposed in bad faith, and this unsupported trusteeship must be dissolved.

While the NABET CWA Resolution to place Local 41 into trusteeship provides no details as to the underlying charges, Defendant Trustee McEwan subsequently distributed a memorandum to the Local 41 membership purportedly setting forth the justification for the trusteeship. (Siddiqui Dec., Ex. O). Each of those allegations including in this *ex post facto* justification, even if they were the underlying basis for the trusteeship, are false, pretextual and made in bad faith.

### 1. False allegations of financial malpractice do not justify a trusteeship.

Defendant McEwan falsely alleged that Plaintiff Siddiqui failed to pay compensation owed to the Willadsen, where the payment was approved by the Local Executive Board at its March 30, 2022 meeting. (Siddiqui Dec., Ex. O). This statement is patently false because the March 30, 2022 approval of payment was conditioned on Willadsen providing supporting documentation. (Siddiqui Dec. ¶ 18, Ex. P-2, P-3, P-4). Such documentation has never been provided. (*See id.*).

Defendant McEwan falsely stated that Plaintiff Siddiqui's alleged failure to make payment to Willadsen has required that Local 41 "spend thousands of dollars defending its violation of state law." (Siddiqui Dec., Ex. O) This statement is patently false because the Local has not expended thousands of dollars defending any violation of state law. (Dkt. 1, ¶ 100).

Defendant McEwan falsely stated the Siddiqui administration failed to transmit dues to the Sector for more than six months resulting in the suspension of certain Local 41 members. (Siddiqui Dec., Ex. O) This is patently false since the Siddiqui administration had not even been in office for six (6) months at the time it was placed in trusteeship. In addition, this allegation was made in bad faith because the purported misconduct was actually a result of the misconduct of the former administration. The Siddiqui administration was working to correct that misconduct, seeking the

9

assistance of Defendants by filing internal charges against those prior officers, but Defendants turned a blind eye to those complaints and instead attempt to blame Siddiqui. (Dkt. 1, ¶¶ 41-71).[2]

The former administration refused to transfer access to bank accounts, membership lists, and other pertinent information and property of the Local Union which delayed the processing of dues payments. At the expiration of his term on March 30, 2022, Keating was required to turn over control of bank accounts to the duly elected officers of Local 41. (Siddiqui Dec., Exs. J and Q). From March 30, 2022, through August 18, 2022, the newly sworn-in officers of Local 41, repeatedly demanded Keating transfer control of all Union bank accounts and access to all Union financial records. (Dkt. 1, ¶¶ 48-49). Keating failed and refused to turn over control of the Union bank accounts, the assets held in those accounts, and the records for each of the respective accounts. (*Id.*). Rather, Keating remained as the account holder and signatory on all accounts long after his term expired. (Dkt. 1, ¶ 49). Local 41 had to engage outside vendors including law and accounting firms to aid them in getting access to these accounts. Those accounts included, but were not limited to: Northern Trust Bank, ABE Federal Credit Union, Fifth Third Bank, BMO Harris, Royal Alliance, and Amalgamated Bank. For each of these accounts, control over these accounts was not transferred to the newly elected officers until between three weeks and four and one-half months after Keating's term expired. (Dkt. 1, ¶ 49).

Keating also failed and refused to provide passwords necessary to the administration of Local 41, including but not limited to passwords for bank and other financial institutions, payroll,

---

[2] Tellingly, one day after the illegal trusteeship was imposed, Defendants Braico and Marinaro sent a letter to Siddiqui, demanding that he turn over access credentials, passwords, and records relating to Local 41's financial, payroll, and administrative accounts. (Siddiqui Dec., Ex. X). This is precisely the type of information which the former administration withheld from the Siddiqui administration, which Defendants refused to acknowledge or address. (Dkt. 1, ¶¶ 41-71). This shows that the trusteeship was both imposed, and is being maintained, in bad faith.

union email accounts, computer servers, shared Google drives, and office printers. (Dkt. 1, ¶ 50). Despite these roadblocks created by the political allies of the Defendants, Local 41 was able to process dues payments and was never advised that any member had been suspended for failure to pay dues. (Dkt. 1, ¶ 105).

Defendant McEwan also falsely stated that the Siddiqui administration approved payment to Local Officers in violation of the Local Bylaws. (Siddiqui Dec., Ex. O). This is patently false as payment for services outside the normal scope of duties is permissible under the Local Bylaws and was a long-time practice of Local 41 by many former administrations, including the Willadsen administration. (Dkt. 1, ¶ 108).

### 2. False allegations based on the democratic process do not justify the trusteeship.

Defendants offer vague justification for the trusteeship to restore democratic procedures in the Local. (*See* Dkt. 1-2). However, all of the allegations are either patently false or were the responsibility of the previous administration. Either way, the reasons alleged by Defendants fail to support imposition of the trusteeship.

Defendant McEwan falsely stated that the Siddiqui administration failed to process election challenges in accordance with the Bylaws. This is patently false because the LEIC conducted an investigation and issued its recommendations on June 18, 2022, which were adopted by the Local Executive Board on June 29, 2022. (Siddiqui Dec., Ex. K and L).

Defendant McEwan falsely stated the Siddiqui administration failed to elect members of the Local 41 Executive Board by secret ballot election, as required by the Bylaws, CWA Constitution, and federal labor law. (Siddiqui Dec., Ex. O). This is patently false since the election at issue was conducted by the former administration which lost the election, not the Siddiqui administration. If this claim refers to the appointment of certain officers after the resignation of

11

incumbent officers, then this claim is false as well. Secretary Anna Bassett and Treasurer Kyle Steenveld were appointed by the Executive Board as permitted under the Local 41 Bylaws, Article III, Section 5(d)(ii), and Section 6(c)(ii). (*Id.,* Ex. Q). The Local 41 Bylaws provide in the event of a resignation of either the Secretary or Treasurer, "the President may appoint a new [officer], subject to the approval by a majority vote at the Board's next regular meeting." (*Id.*, Art. III, Secs. 5, 6). Secretary Bassett's appointment to Secretary was approved by a majority vote at the Local 41 Executive Board meeting on August 31, 2022. (Siddiqui Dec., Ex. W). Treasurer Steenveld's appointment to Treasurer was approved a majority vote at the Local 41 Executive Board meeting on April 27, 2022. (*Id.,* Ex. P-2). Defendant Braico acknowledged the proprietary of such appointment. (Siddiqui Dec., Ex. R) (Braico email to Siddiqui).

Any assertion that this trusteeship was brought in the interest of restoring democratic processes is belied by the actions taken by Defendants before and after the trusteeship. In truth, the trusteeship was brought specifically to undermine democratic processes by overturning the results of a legitimate officer election, and then almost immediately ordering a so-called "rerun" election in an attempt to return to power Defendants' political allies.

      **3.**      **Allegations that the Trusteeship was Imposed to Otherwise Carry Out the Objectives of NABET-CWA Are False, Pretextual and Made in Bad Faith**

Defendant McEwan falsely stated that the Siddiqui administration altered and falsified Local 41 Executive Board meeting minutes. This is patently false. Drafts of minutes that did not accurately reflect the conduct of Executive Board meetings have been corrected before final approval by the full Executive Board. (Siddiqui Dec., Ex. S). However, once approved by the Executive Board, no meeting minutes have ever been altered. (*Id.,* Exs. P-1, P-2, P-3, P-4, S).

Defendant McEwan falsely stated that the Siddiqui administration banned Local 41 members who were or supported former officers. (*Id.* Ex. O). This is patently false as no former

12

officers have been banned from the Local 41 office. The only individual ever banned from the premises was member Danny Bridges after he made physical threats against Siddiqui and his family for which police reports were filed. (*Id.,* Ex. T) (Police reports).

Defendant McEwan falsely stated the Siddiqui administration published a falsified excerpt from the Local Executive Board meeting minutes in a member newsletter. This is patently false as the membership publication, sent around July 24, 2022, accurately reflected the approved (and corrected) meeting minutes. (Siddiqui Dec., Exs. U, P-2, P-3, and P-4).

### 4. Defendants' Justifications for the Trusteeship are Pretextual, and the Trusteeship was Imposed in Bad Faith

In addition to the absence of any hearing, the evidence shows that any underlying bases for the trusteeship were false, pretextual and made in bad faith, and therefore, there is a likelihood of success on the merits that the trusteeship should be dissolved and that a temporary restraining order effectuating that dissolution should be granted. While the NABET-CWA Bylaws allow for imposition of a trusteeship, this alone does not make a trusteeship valid. A valid trusteeship must also be one where "the purpose is one of those enumerated in § 462 [of the LMRDA]." *Int'l Bhd. Of Teamsters v. Local Union* 810, 19F.3d 786, 790 (2d Cir. 1994). "A trusteeship established in bad faith is void *ab initio*." *Allied Industrial Workers*, 693 F.2d 666. While Defendants sufficiently parrot the language of 29 U.S.C. § 462 in their offered justifications for the trusteeship, they have not imposed the trusteeship for an enumerated reason and have done so in bad faith. The justifications offered by Defendants are merely pretext.

As discussed above, Defendants offer no valid justifications for the imposition of the trusteeship. Even if each of the allegations contained in the McEwan memorandum were the underlying basis for the trusteeship, each one of those allegations was patently false and pretextual.

The sole basis for the instant trusteeship was to oust the democratically elected officers and to seat their political allies who were defeated in by the Siddiqui administration.

> **B.    Plaintiffs Have Suffered Irreparable Harm and Have No Adequate Remedy at Law**

The removal of Local 41's democratically elected officers caused irreparable harm. First, the removal of Plaintiffs from office denied union members the representatives of their choice. Their removal denied the membership of their leadership, knowledge and advice at a critical time for Local 41. A fundamental right which the LMRDA was enacted to protect is a local union's right of self-determination. *Mason Tenders District Council*, 884 F.Supp. at 833. The trusteeship bars the elected officers from performing those duties which they were elected to perform. *Id*. "Permitting an unlawful trusteeship to continue would cause irreparable harm" to the local union and its members. *Blevins,* 2020, WL 5909073 at *13. Here, the Siddiqui slate were duly elected union officials. Their immediate removal from office has made it impossible for them to perform the duties to which they were elected by the members of Local 41.

This Court has held that irreparable harm in the context of a trusteeship includes damage to the reputation and image of the union. *International Brotherhood of Teamsters, et al. v. Local Union 705*, 827 F.Supp. 513, 516 (N.D. Ill. 1993). The allegations against the elected officers of Local 41 are that the union engaged in financial mismanagement and undermined democratic procedures. These allegations irreparably damage the reputation of the officers of Local 41. As such, Local 41's right of self-determination has been abridged by the trusteeship. Plaintiffs have no adequate remedy at law to address this irreparable harm. It is not an issue of monetary damage, but damage to the integrity of the Siddiqui administration's function and reputation, and to that of Local 41 as a whole. Therefore, a temporary restraining order is appropriate.

### C. The Harm to Plaintiffs Outweighs Any Alleged Harm To Defendants.

As discussed above, Defendants have not justified the imposition of the trusteeship. There is no glaring corruption that they are seeking to stop that would continue if the injunctive relief was to be granted. *See and compare Blevins,* 2020 WL 5909073 at *13 (balance of harms favors dissolving injunction where parent union "has pointed to no risk of mismanagement should [local union] be granted its autonomy again."). Further, the Defendants' reputation is not at risk if the injunctive relief is granted.

On the other hand, the Siddiqui administration's reputation will be irreparably harmed if injunctive relief is not granted. Due to the allegations leveled against them by Defendants, for which they were denied due process and which have been shown to be completely false, pretextual, and made in bad faith, Plaintiffs' reputations for effectively representing their members are injured. Furthermore, Plaintiffs are unable to carry out the work they were elected to do, causing irreparable harm to the Local 41 membership every day this unlawful trusteeship remains in place.

### D. Granting the Injunctive Relief Will Serve the Public Interest

A fundamental right which the LMRDA was enacted to protect is a local union's right to self-determination. *Mason Tenders Dist. Council*, 884 F.Supp. at 833. This public interest is being infringed upon by Defendants with the improper imposition of the trusteeship. Therefore, it would serve the public to grant injunctive relief. *See Blevins,* 2020 WL 5909073 at *13 ("The public interest weighs in favor of dissolving a trusteeship imposed in violation of the LMRDA.").

### CONCLUSION

For the foregoing reasons, the Court should enter a temporary restraining order dissolving the unlawful and bad faith trusteeship of Local 41.

Respectfully Submitted,

					/s/ Margaret Angelucci

					/s/ Matt Pierce

Margaret Angelucci
Matt Pierce
Asher, Gittler & D'Alba, Ltd.
200 W. Jackson Blvd., Suite 1900
Chicago, IL 60606
312/263-1500 (phone)
maa@ulaw.com
mjp@ulaw.com