UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAZA SIDDIQUI, MARCUS CROSBY, ANNA BASSETT, DOUG WEBBER, NATHAN CANTU, JEFFREY CHEATHAM, and TODD ROBERTS, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) |
| NABET-CWA, AFL-CIO, CLC, CHARLES BRAICO, in his capacity as Sector President of NABET-CWA, LOUIS M. MARINARO, in his capacity as Sector Vice President of NABET-CWA, and EDWARD McEWAN, in his capacity as Temporary Trustee of NABET-CWA Local 41, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

22 C 5732

Judge Gary Feinerman

**MEMORANDUM OPINION AND ORDER**

Raza Siddiqui and several other members of NABET-CWA Local 41 ("the Local") bring this suit against NABET-CWA, AFL-CIO, CLC ("the Sector"), two Sector officers, and the trustee that the Sector imposed on the Local, alleging that the trusteeship violates Title III of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 401 *et seq*. Doc. 9. Plaintiffs move for a temporary restraining order ("TRO") requiring the Sector to dissolve the trusteeship. Doc. 4. The motion is granted.

**Background**

For purposes of the present motion, the court finds the facts set forth in this Background section and those set forth in the Discussion section below. The court's findings, based as they are on a limited record, are of course interlocutory. *See Gould v. Lambert Excavating, Inc.*, 870 F.2d 1214, 1218 (7th Cir. 1989) ("The district court's findings of fact with respect to a motion for a preliminary injunction are not binding at trial or at a hearing for a permanent injunction.").

1

The Sector is a labor organization organized subject to its own bylaws and to the constitution of its parent organization, Communications Workers of America. Doc. 9 at ¶¶ 14, 22; *see Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) (noting that a verified complaint is "the equivalent of an affidavit"). The Sector is the parent organization of the Local, which in turn has its own bylaws and governing Executive Board. Doc. 9 at ¶¶ 22, 20.

Siddiqui was elected President of the Local in March 2022. *Id*. at ¶¶ 7, 37. He ran with a slate of candidates that defeated the incumbent President, Chris Willadsen, and his slate. *Id*. at ¶¶ 31, 37. Siddiqui's slate included Plaintiff Marcus Crosby, who was elected Vice President. *Id*. at ¶¶ 8, 37. Sector President Charles Braico, a defendant here, had endorsed Willadsen and his slate. *Id*. at ¶ 32. Plaintiffs Doug Webber, Nathan Cantu, and Jeffrey Cheatham were members of the Local's Executive Board during Siddiqui's tenure as President. *Id*. at ¶¶ 11-13. Anna Bassett, also a plaintiff, was appointed Secretary of the Local after her elected predecessor resigned. *Id*. at ¶ 9. Todd Roberts, another plaintiff, is a member of the Local. *Id*. at ¶ 10. Siddiqui was sworn into office on or about March 30, 2022. *Id*. at ¶ 39.

On September 22, 2023, the Sector's Executive Council enacted a resolution placing the Local under a temporary trusteeship, installing Edward McEwan, a defendant here, as temporary trustee. *Id*. at ¶ 93; Doc. 9-1. The resolution stated that the Sector had received "substantial evidence" demonstrating that "immediate action" was needed to (1) "restore democratic procedures in the Local"; (2) "correct financial malpractice in the Local"; and (3) "otherwise carry out the objectives of NABET-CWA within Local 41." Doc. 9-1. The trusteeship removed all elected Local officers from their positions. Doc. 9 at ¶ 93.

McEwan later provided a more detailed explanation of the grounds for imposing the trusteeship. Specifically, he identified

2

numerous serious violations of the Local and Sector Bylaws, the CWA Constitution, and federal labor law, including:

1. The failure to elect members of the Local 41 Executive Board by secret ballot election, as required by the Bylaws, CWA Constitution, and federal labor law;

2. The failure to process challenges to the Local Officer election in accordance with the Bylaws;

3. The alteration and falsification of Local 41 Executive Board meeting minutes;

4. The discrimination and retaliation against Local 41 members who were or supported former officers, by conduct including but not limited to banning members from the Local 41 office; publishing sensitive personal and personnel information (including home addresses) in the NABET 41 Quarterly Update; and publishing a falsified excerpt from the Local Executive Board meeting minutes in the Quarterly Update;

5. The failure of the Local President and Treasurer to pay compensation owed to the former Local President, where the payment was approved by the Local Executive Board at its March 30, 2022, meeting, and the act has forced the Local to spend thousands of dollars defending its violation of state law;

6. The failure of the Local to transmit dues to the Sector for more than six months, resulting in the automatic suspension from membership of every Local 41 member who relies on the Local to transmit dues to the Sector (i.e. members not on dues checkoff); and

7. The approval of payments to Local Officers for "work" done on the officers' personal time (i.e. when the officer was not scheduled to work), in violation of the Local Bylaws.

Doc. 6-1 at 129. A "Membership Update" in the record provides a slightly different set of grounds, *id*. at 128, but the parties focus on the grounds quoted above, so the court does, too.

Upon filing this suit in mid-October, Plaintiffs moved for a TRO requiring the Sector to dissolve the trusteeship and restore the removed officers to their pre-trusteeship positions with the Local. Doc. 4; Doc. 9 at pp. 23-24. The court held a series of hearings, including an evidentiary hearing. Docs. 14, 19, 28, 30. In a post-hearing filing, Doc. 35, the Sector represents that a hearing on a petition to dissolve the trusteeship signed by several dozen Local members

3

(including some of the Plaintiffs) is scheduled to begin on December 13, 2022. Doc. 35-1; Doc. 11-2 at 27-54; Doc. 11 at ¶ 6.

## Discussion

### I.   Siddiqui's Standing

In their oral summation, Doc. 30, Defendants argued that Siddiqui lacks standing to bring this suit because, given his failure to pay dues, he is not a member of the Local in good standing. It is not entirely clear whether Defendants' standing argument is statutory or constitutional (or both). The answer does not matter, for at this juncture, Siddiqui has established by a preponderance of the evidence that he is a member of the Local in good standing.

Defendants contend that only union members in good standing can file suit under the LMRDA. To the extent Defendants argue that Siddiqui is not a member in good standing and thus has no viable cause of action under the LMRDA, the argument implicates the merits, not subject matter jurisdiction. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014) ("[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.,* the court's statutory or constitutional *power* to adjudicate the case.") (internal quotation marks omitted). As to subject matter jurisdiction, Siddiqui easily establishes "the irreducible constitutional minimum of standing"—he suffered an injury in fact when the trusteeship ousted him from office; that injury was fairly traceable to the imposition of the trusteeship; and dissolving the trusteeship would redress his injury by returning him and his colleagues to office. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

Even if Defendants' argument that Siddiqui is ineligible to hold office because he is behind on his dues payments, and therefore not a Local member in good standing, implicated Article III standing, it would fail at this juncture. Because the argument (assuming it implicates Article III standing) is a factual attack, "the court may consider and weigh evidence outside the

4

pleadings to determine whether it has power to adjudicate the action." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020). "Once the allegations supporting standing are questioned as a factual matter—either by a party or by the court—the plaintiff must support each controverted element of standing with competent proof," meaning "a showing by a preponderance of the evidence, or proof to a reasonable probability, that standing exists." *Id*. at 278 (internal quotation marks omitted).

      Defendants assert that two emails written by Siddiqui show that he had not paid dues since becoming President of the Local in late March. Doc. 30. The emails do not, in fact, establish that. One of them—sent to McEwan—is dated September 28, 2022, shortly after the Sector installed McEwan as trustee. Doc. 26-4 at 25. In it, Siddiqui informed McEwan that he had advised the Local to bill him for his dues once he became President and that he wanted to ensure that he was billed. *Ibid*. The other email—sent to various individuals, including McEwan and Braico—is dated October 17, 2022. Doc. 26 at 4. In it, Siddiqui stated that McEwan said that he (McEwan) would tell Siddiqui whether Siddiqui owed any dues, but that McEwan had not done so; that Siddiqui had attempted to drop off a check at the Local's office on October 7 but was told by a security officer that nobody was present; that he sent the check to the office by certified mail; and that it had been delivered on October 15. *Ibid*.; *see id*. at 7. Defendants also submit images that appear to show: (1) USPS tracking information reflecting a delivery completed on October 15; and (2) a cashier's check dated October 7 from Siddiqui in the amount of $1,200, with the memo line "ESTIMATED DUES PAYMENT" and an envelope with a certified mail barcode matching the USPS tracking number associated with the October 15 delivery. *Id*. at 6-7.

5

Those documents do not show that Siddiqui had failed to pay dues since March or that he is no longer a member of the Local in good standing. Rather, they show that—apparently without help from McEwan—Siddiqui took measures to cover any unpaid dues before this suit was filed on October 18. At this juncture, the court concludes that Siddiqui has established by a preponderance of the evidence that he is a member in good standing—and thus that he is entitled to sue under the LMRDA. And that means, even under Defendants' attenuated and probably incorrect notion of Article III standing, that Siddiqui has standing to bring this suit.

**II.     Exhaustion**

Defendants argue that Plaintiffs should be required to exhaust internal union procedures before their claims are heard in federal court. Doc. 11 at 2. In support, Defendants cite *Stevens v. Northwest Indiana District Council, United Brotherhood of Carpenters*, 20 F.3d 720 (7th Cir. 1994), which observes in a footnote that a provision in Title I of the LMRDA "clearly authorizes union[s] to require their members to utilize and exhaust internal remedial procedures (for a limited period) before seeking legal redress for grievances." *Id*. at 731 n.28 (citing 29 U.S.C. § 411(a)(4)); *but see NLRB v. Indus. Union of Mar. & Shipbuilding Workers, Loc. 22*, 391 U.S. 418, 425-26 (1968) (interpreting the same provision "not [as] a grant of authority to unions more firmly to police their members[,] but [as] a statement of policy that the public tribunals whose aid is invoked may in their discretion stay their hands for four months, while the aggrieved person seeks relief within the union"). But Plaintiffs sue under Title III of the LMRDA, Doc. 9 at ¶ 138, which, "unlike Title I, does not expressly require pre-suit resort to internal union procedures." *Stevens*, 20 F.3d at 732. Moreover, *Stevens* provides that "[w]hether to excuse a failure to exhaust before bringing an LMRDA suit is a matter within the court's discretion." *Id*. at 731 n.28 (citing *Indus. Union*, 391 U.S. at 426).

Exhaustion is not required here. This case is brought under Title III of the LMRDA, not Title I. In any event, as the Seventh Circuit has observed, "[e]xhaustion of … intra-union remedies generally has not been required in cases where local union members seek dissolution of a trusteeship." *Int'l Union, Allied Indus. Workers v. Loc. Union No. 589, Allied Indus. Workers*, 693 F.2d 666, 676 n.5 (7th Cir. 1982) (citing cases). The reason, the Seventh Circuit explained, is that "[i]ntra-union appeals in such cases are unlikely to provide relief since the protests are entertained by the very bodies that imposed the trusteeships." *Ibid*. Moreover, as noted below, Plaintiffs are suffering irreparable harm if the trusteeship is, in fact, unlawful. *Cf. Citadel Sec., LLC v. CBOE, Inc.*, 808 F.3d 694, 700 (7th Cir. 2015) (noting that statutory exhaustion requirements may be waived "where the attempt to exhaust administrative remedies would be useless or inadequate to prevent irreparable harm").

### III. Whether a TRO is Warranted

A TRO motion is analyzed under the same rubric as a preliminary injunction motion. *See Cook Cnty. v. McAleenan*, 417 F. Supp. 3d 1008, 1015-16 (N.D. Ill. 2019), *aff'd on other grounds sub nom. Cook Cnty. v. Wolf*, 962 F.3d 208 (7th Cir. 2020). To obtain a TRO, "the moving party must establish that (1) without preliminary relief, it will suffer irreparable harm before final resolution of its claims; (2) legal remedies are inadequate; and (3) its claim has some likelihood of success on the merits." *Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 381 (7th Cir. 2018). "If the moving party makes this showing, the court balances the harms to the moving party, other parties, and the public." *Ibid*. "In so doing, the court employs a sliding scale approach: the more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need [the balance] weigh in his favor." *Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018) (alteration and internal quotation marks omitted). "The sliding scale approach is not mathematical in nature, rather it is

7

more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Stuller, Inc. v. Steak N Shake Enters.*, 695 F.3d 676, 678 (7th Cir. 2012) (internal quotation marks omitted). "Stated another way, the district court sits as would a chancellor in equity and weighs all the factors, seeking at all times to minimize the costs of being mistaken." *Ibid*. (alteration and internal quotation marks omitted).

The likelihood of success on the merits is the most important factor here, as the other factors are essentially in equipoise. A trusteeship wrongfully imposed and maintained would inflict irreparable harm on Plaintiffs (and on the Local) by preventing duly elected and appointed leaders from holding office. *See Blevins v. Int'l Bhd. of Teamsters, Int'l Union*, 2020 WL 5909073, at *13 (N.D. Ill. Oct. 6, 2020) ("Permitting an invalid trusteeship to continue would cause irreparable harm to Local 786."), *appeal dismissed*, 2020 WL 9217224 (7th Cir. Dec. 28, 2020); *Mason Tenders Dist. Council of Greater N.Y. v. Laborers' Int'l Union*, 884 F. Supp. 823, 833 (S.D.N.Y. 1995) ("As elected officials of the District Council removed from office as a result of the imposition and continuation of the trusteeship, the plaintiffs have established irreparable harm. The trusteeship bars the elected District Council members from performing those duties which they were elected to perform. A fundamental right which LMRDA was enacted to protect is a local union's right of self-determination."). Because the time lost as duly elected and appointed leaders cannot be regained, it is no answer to say that leaders ousted by the trustee could seek to regain their positions in the next election and under a newly elected administration.

At the same time, dissolving a properly imposed trusteeship would irreparably harm the Sector (and the Local) by placing problematic leaders back at the Local's helm. *See Int'l Bhd. of*

8

*Teamsters v. Loc. Union 705*, 827 F. Supp. 513, 516 (N.D. Ill. 1993) ("The court further finds that there is no adequate remedy available at law, and to permit the present executive board to remain in control of Local 705 and to thwart the efforts of the emergency trustee would create an irreparable injury to the Teamsters. The harm to the Teamsters exists in that its local affiliate is operating under allegations of serious financial wrongdoing. The reputation of the union and its image are at stake."). Nor does the public interest tilt in either direction: There is a public interest in vindicating union democracy, but also in ensuring that unions faithfully serve the interests of their members and comply with applicable bylaws. *See Blevins*, 2020 WL 5909073, at *13 ("The public interest weighs in favor of dissolving a trusteeship imposed in violation of the LMRDA."); *Loc. Union 705*, 827 F. Supp. at 516 ("The public interest in this case also weighs in favor of the Teamsters where the activities of its local union are at stake which threaten Local 705's members' financial interests."); *Int'l Bhd. of Boilermakers v. Loc. Lodge No. 1244*, 1988 WL 114590, at *8 (N.D. Ind. Jan. 25, 1988) ("Congress has concluded that injunctive enforcement of a properly imposed trusteeship comports with the public interest.") (citing 29 U.S.C. § 464(c)); *Marketti v. Fitzsimmons*, 373 F. Supp. 637, 640 (W.D. Wis. 1974) ("The legislative background of [29 U.S.C. § 464(a)] discloses a strong public interest in supervising the use of trusteeships.").

As for the likelihood of success on the merits, the court must determine whether Plaintiffs can show that the trusteeship is invalid. Title III of the LMRDA provides in relevant part:

> Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization.

29 U.S.C. § 462. Title III further provides:

> In any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided in accordance with its constitution or bylaws shall be presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 462 of this title.

29 U.S.C. § 464(c). Plaintiffs submit that (1) the trusteeship not entitled to a presumption of validity because it was imposed without first conducting a fair hearing; and (2) the trusteeship is invalid because it was imposed in bad faith.

As for the first argument, Plaintiffs argue that "the trusteeship is presumptively invalid" because it "was imposed without any hearing as required by the LMRDA." Doc. 5 at 7. The pertinent statutory text states that a trusteeship is entitled to a presumption of validity if it has been "authorized *or* ratified after a fair hearing." 29 U.S.C. § 464(c) (emphasis added). The prospect that a trusteeship can be "ratified" necessarily implies that the "fair hearing" can occur after the trusteeship is imposed. *See Ratification*, Black's Law Dictionary (11th ed. 2019) ("Confirmation and acceptance of a previous act, thereby making the act valid from the moment it was done"). And the Sector's bylaws allow for a post-imposition hearing, Doc. 6-1 at 33, 53 ("[T]he Local Union shall be entitled to a full and fair trial before the Sector Executive Council no later than six (6) months after the establishment of the trusteeship."), which is presently scheduled for mid-December, Doc. 35-1. Accordingly, it would appear that a presumption of validity attaches to the trusteeship.

That said, the court finds, based on the present record, that Plaintiffs have overcome the presumption by demonstrating the trusteeship's invalidity by clear and convincing proof. Section 464(c) "permits a trusteeship to be challenged on the … grounds that it was not established or maintained in good faith." *Allied Indus. Workers*, 693 F.2d at 676 (emphasis

omitted). "[A] trusteeship established in bad faith is void *ab initio*." *Ibid*. "[T]he requirement of 'good faith' obtains regardless of the 'purpose' for which a trusteeship is created." *Ibid*. "Therefore, clear and convincing proof of 'bad faith' is a complete defense" to a trusteeship. *Ibid*. For present purposes, the court will assume without deciding that "[a]s long as the trusteeship is supported by at least one proper purpose, it is immaterial that the labor union which imposed the trusteeship also may have had an impermissible motive." *Boardman v. SEIU*, 2022 WL 4602115, at *18 (N.D. Ill. Sept. 30, 2022) (alteration in original) (internal quotation marks omitted).

As noted, the parties focus on the seven grounds the Sector articulated for imposing a trusteeship on the Local. Doc. 6-1 at 129. The court considers each ground in turn.

### 1. Failure to Elect Members of the Local 41 Executive Board by Secret Ballot Election

The first ground involves Siddiqui's appointment of stewards without a secret ballot election. Defendants argue that the Local's bylaws do not permit stewards to be appointed without a secret ballot election, unless no nominating petition is received and the position is declared vacant. Doc. 11 at 3-4, 15, 18. But Plaintiffs adduce substantial documentary evidence showing that in past administrations of the Local, stewards and steward alternates had been appointed. Doc. 23 at 25, 38, 47, 67, 78, 86, 95, 105-106, 115; Doc. 24 at 5, 13, 21, 38. While Defendants present evidence that, at least in some of those instances, steward/steward alternate nominating petitions had been circulated, Doc. 26-1 at 12-14, they implicitly conceded at the hearing, Doc. 30, that petitions were not circulated in each instance. And Siddiqui credibly testified that two prior administrations, including Willadsen's, were not placed in trusteeship by the Sector for appointing stewards and steward alternates in the manner that his administration did. Doc. 38 at 100:15-100:22, 101:20-102:02; *see id*. at 173:15-173:17. So, Plaintiffs have

11

shown at this juncture that that stewards were appointed (as opposed to elected by secret ballot or appointed after no nominating petition was received and a vacancy declared) in past administrations and that no trusteeship was imposed in the wake of such appointments. This is strong and, at this juncture, conclusive evidence that the Sector's first ground for imposing the trusteeship is invalid.

### 2. Failure to Process Challenges to the Local Officer Election in Accordance with the Local's Bylaws

The Local's bylaws require the Executive Board to "act quickly … and make a full investigation and report" after receiving a timely written challenge to the legality of an election. Doc. 6-1 at 176. In April 2022, Local members Danny Bridges and Michael Cunningham filed challenges to the March 2022 officer election in which Siddiqui and his slate defeated Willadsen and his slate. Doc. 9 at ¶ 72; Doc. 6-1 at 145-46; Doc. 38 at 29:14-30:03. The Local, then under Siddiqui's leadership, dismissed those challenges at its May 25, 2022 Board meeting with a motion that was to "serve as the official report of the Executive Board addressing" the challenges. Doc. 6-1 at 159 (capitalization altered). Siddiqui credibly testified that, notwithstanding that dismissal, he determined that a committee should further investigate the complaints and that he initiated that process on or around May 26. Doc. 38 at 31:23-32:08.

Defendants point to a lack of documentary evidence corroborating the timing of Siddiqui's decision and efforts, Doc. 30, but the court credits Siddiqui's testimony. Defendants further argue that the investigation should have been conducted *before* the challenges were dismissed. But Plaintiffs have shown a likelihood that they did, in fact, take adequate steps to investigate the election challenges. And Siddiqui credibly testified that the Sector received the Local's report on its election investigation in June, Doc. 38 at 35:09-35:19, well before the

12

trusteeship was imposed. Accordingly, based on the present record, the Sector's second ground for imposing the trusteeship is invalid.

       3.      **Alteration and Falsification of Local Executive Board Meeting Minutes**

The minutes at issue concern the March 30, 2022 Local Executive Board meeting, at which Willadsen, at the very end of his term as the Local's President, submitted a motion to be "paid of all of his unused vacation time[] (109 days)," Doc. 6-1 at 135 (capitalization altered), which amounted to around $56,000, Doc. 9 at ¶¶ 44, 53; *see* Doc. 26-3 at 2-9. The motion passed. Doc. 6-1 at 135. Then, at the April 27 Board meeting—held after Siddiqui had replaced Willadsen—the Board approved a motion to "table the approval of meeting minutes of the last Executive Board meeting from 3/30/2022 pending corrections," including "questions about a motion made by then President Christopher Willadsen that was subject to an audit at the beginning of the next E-Board meeting on 5/25/2022." Doc. 6-1 at 140 (capitalization altered). The corrected minutes ultimately read: "Approve having Chris Willadsen paid for any unused vacation time which he can prove he did not use and defend against claims to the contrary." Doc. 25 at 11 (capitalization altered); *see id*. at 6 (noting that the March 30 minutes had been "corrected and ammended [sic] for errors and ommisssions [sic] noted on [sic] the meeding [sic] April 27th 2022") (capitalization altered); Doc. 6-1 at 152 (May 25, 2022 meeting minutes, reflecting passage of a motion to "approve the corrected meeting minutes of the last executive board meeting from 3/30/2022") (capitalization altered).

Defendants essentially submit that Willadsen's March 30 motion passed without any requirement for him to substantiate his payment request, and that Siddiqui and his allies later falsified the meeting minutes to impose such a requirement. Doc. 11 at 4-5; Doc. 30. Siddiqui testified that the "spirit" of Willadsen's motion was "to pay himself money, and that he would

13

provide evidence and be able to defend it against claim[s]." Doc. 38 at 89:19-90:17. Cunningham, a member of the Local Executive Board, *id*. at 132:21-132:23, disagreed, testifying that when Willadsen made the motion, "there was a short discussion, and there was an objection by a couple of the stewards and -- to the actual motion," *id*. at 138:04-138:15. Cunningham added that "[p]eople didn't want to see [Willadsen] get paid," but that he did not remember documentation coming up. *Id*. at 138:13-138:21; *see also id*. at 141:14-141:20, 145:09-145:17, 146:03-146:09. He also testified that discussions and objections are not always noted in the meeting minutes. *Id*. at 139:05-140:06.

The testimony conflicts regarding the precise nature of Willadsen's motion at the March 30 meeting. Given the relatively large payment at issue, the reasonableness of requiring documentation for such a payment, and the discussion at the March 30 meeting not memorialized in the original draft minutes, the court credits Siddiqui's testimony that the motion as passed necessarily incorporated a requirement that Willadsen demonstrate his entitlement to the payment. Accordingly, based on the present record, the minutes of the March 30 Board meeting were not falsified, and the Sector's third ground for imposing the trusteeship is invalid.

4. **Discrimination and Retaliation Against Local 41 Members Who Were or Supported Former Officers, Including by Banning Members from the Local 41 Office; Publishing Sensitive Information in the Quarterly Update; and Publishing a Falsified Excerpt from the Local Executive Board Meeting Minutes in the Quarterly Update**

As for the first part of this ground, it appears that the only Local member banned from the Local's office was Danny Bridges, who had threatened Siddiqui and his family. Doc. 5 at 12-13; Doc. 30; Doc. 6-1 at 187-90. The Siddiqui administration cannot be faulted for banning Bridges under those circumstances. As for the publication in a Quarterly Update of a document showing Willadsen's home address and personal e-mail address, Doc. 38 at 165:11-165:17; Doc. 6-1 at 194, that may have been inadvisable, but Defendants fail to make a plausible case that such a

14

misstep justified the imposition of a trusteeship. And the allegation about falsified meeting minutes is meritless for the reasons set forth above. Accordingly, based on the present record, the Sector's fourth ground for imposing the trusteeship is invalid.

> 5. **Failure of the Local President and Treasurer to Pay Compensation to Willadsen, Forcing the Local to Spend Thousands of Dollars Defending Its Violation of State Law**

This ground is inextricably linked to the third ground. If the corrected meeting minutes are accurate, then the Local (under Siddiqui's leadership) was justified in requiring documentation from Willadsen before paying him some $56,000. The parties disagree about how much the Local expended in legal fees associated with this dispute. Doc. 30. (Willadsen ultimately filed a claim with the Illinois Department of Labor. *Ibid*.; *see* Doc. 26-3 at 2-9.) But given the substantial sum Willadsen was seeking, spending even several thousand dollars of legal fees would have been in the Local's best interest to forestall improperly making a $56,000 payment. Accordingly, based on the present record, the Sector's fifth ground for imposing the trusteeship is invalid.

> 6. **Failure of the Local to Transmit Dues to the Sector for More Than Six Months, Resulting in the Automatic Suspension of Local 41 Members Who Rely on the Local to Transmit Dues to the Sector**

The Sector claims that the Siddiqui administration failed to transmit dues to the Sector for more than six months, triggering the automatic suspension of some Local members. To support the Sector's position, Sector President Braico testified that the Local attempted to file two reports, but that they were flawed and were not accompanied by any funds. Doc. 38 at 164:03-164:14, 176:21-176:25.

Plaintiffs respond that the Local "was never advised that any member had been suspended for failure to pay dues." Doc. 9 at ¶ 104. Plaintiffs further maintain that the Local under Siddiqui's leadership paid or tried to pay dues, pointing minutes from the June 29, 2022

Executive Board meeting referencing a "bottom-up dues payment from January-March 2022." Doc. 27 at 5; *see* Doc. 38 at 170:22-171:04.  And Plaintiffs attribute their delay in transmitting dues (at least in part) to transition issues created by the former Local leadership.  Doc. 5 at 9-11; *see* Doc. 38 at 158:05-158:08, 177:03-177:08 (Braico acknowledging requests from the Siddiqui administration for help in getting access to the Local's bank accounts).

Regardless of the delay's cause, Plaintiffs presented convincing evidence that the Local had, during past administrations, been in arrears on dues payments for more than six months.  Doc. 27 at 40 (March 31, 2021 Executive Board minutes) ("I have been working with our staff and the staff at the Sector office to get Local 41 caught up in its dues remittance payments.  We processed five months last week.  We will process five more months this week, and so on."); *id*. at 48 (April 28, 2021 Executive Board minutes) ("Dues Remittance (12 Months)"); *id*. at 49 (April 28, 2021 Executive Board minutes) ("[O]ur dues remittance payments are now current! We had been 18 months behind at one point, due mainly to problems with Aptify.").  No trusteeship was imposed in those other instances, Doc. 38 at 173:15-173:17, and the Sector fails to persuasively show why the delay here warranted a trusteeship while the prior comparable delays did not.  Accordingly, based on the present record, the Sector's sixth ground for imposing the trusteeship is invalid.

   7. **Approval of Payments to Local Officers for "Work" Done on the Officers' Personal Time, in Violation of the Local Bylaws**

The Sector argues that the Siddiqui administration improperly agreed to pay Local Vice President Crosby over $2,600 to which he was not entitled.  Doc. 11 at 16-17.  Defendants initially argued that Plaintiffs' submission that Crosby could be paid for work beyond the normal scope of his duties was "absolutely false."  *Id*. at 16.  Later, Doc. 19, they acknowledged that officers may be paid for lost time if they take time off work to perform work for the Local, but

16

argued that Crosby had not shown that he was scheduled to work and gave up that work to instead perform work for the Local.

Siddiqui testified that under prior administrations, he had been paid for "lost time" even though he could not have shown that he missed job opportunities or assigned work to perform work on the Local's behalf, as he was a freelancer without a regular schedule. Doc. 38 at 37:16-41:03; *see* Doc. 25 at 17-18 (email and paperwork relating to past lost time payment to Siddiqui); Doc. 26-2 at 4 (email from Siddiqui stating "I have attached the sheet which I had previously used to submit for salary loss when I was doing union approved work instead of my regular job"). In any event, Crosby credibly testified that he had to take time off from scheduled work to handle union business that appeared to extend beyond the scope of his ordinary duties as the Local's Vice President. Doc. 38 at 126:05-127:20. Given this, the approval of payment to Crosby was justified, and based on the present record, the Sector's seventh rationale for imposing the trusteeship is invalid.

### 8. Complaints About the Siddiqui Administration

For the sake of completeness, the court notes that Braico testified to the high volume of complaints he received about the Local's governance after Siddiqui and his slate took office. Doc. 38 at 158:23-160:14. This was not itself an enumerated reason for the trusteeship. Doc. 6-1 at 129. In any event, the court cannot ascertain at this juncture which proportion of the complaints were legitimate or whether those who opposed Siddiqui's election were attempting to exercise a sort of heckler's veto by flooding the Sector with groundless or insubstantial complaints.

\* \* \*

In sum, on the present record, the grounds asserted by the Sector for imposing the trusteeship are all invalid. *See Boardman*, 2022 WL 4602115, at \*18. The lack of even a single

valid ground for imposing the trusteeship demonstrates bad faith, and the fact that the Sector saw fit to assert so many invalid grounds confirms the point. Accordingly, at this juncture, Plaintiffs have demonstrated by clear and convincing proof that the trusteeship was not established in good faith and is therefore invalid. *See* 29 U.S.C. § 464(c); *Allied Indus. Workers*, 693 F.2d at 676.

### IV.     Rule 65(c) Bond

Rule 65 provides: "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Defendants argue that if a TRO is entered, the court should order Plaintiffs to post a $50,000 bond in light of the expenses Defendants have incurred in establishing the trusteeship. Doc. 22. Plaintiffs respond by suggesting a $5,000 bond. Doc. 30. Plaintiffs are ordered to pay a bond of $10,000, an amount sufficient to pay any costs and damages that may be sustained by Defendants if the TRO is later vacated and found to have been entered in error. *See Blevins v. Int'l Bhd. of Teamsters, Int'l Union*, No. 19 C 8075, ECF No. 88 (entering a preliminary injunction dissolving a trusteeship and finding a $10,000 bond sufficient to cover potential costs and damages).

### Conclusion

Plaintiffs' motion for a TRO is granted. The court orders Defendants to: (1) dissolve the trusteeship and restore the Local to its pre-trusteeship status; and (2) restore Local members who held elected or appointed office at the time the trusteeship was imposed to their respective offices. Plaintiffs shall pay a bond in the amount of $10,000 to the Clerk of Court. Plaintiffs'

18

request for retrospective monetary relief is a damages remedy unsuitable for a TRO and is denied without prejudice.

December 7, 2022                            _____
                                                         United States District Judge